Kelly Stacey appearing on behalf of the people. In this case, the defendant claimed that the trial court abused its discretion when it denied the defense motion to admit evidence of alleged prior sexual activity of the 15-year-old victim in this case, BP. The defense argued that there was evidence of DNA from three males in the underwear of BP. Notably, the defense never claimed that the defendant's DNA was not present, just that the defense should be able to tell the jury about the other DNA material found in the underwear. The trial court properly denied the defense motion in this case because this is prohibited by the rape shield law. 15-year-old BP certainly could not have consented to have sex with her stepfather. At hearing on the motion, the defense argued that it wanted to inform the jury that two other males may have had sex with BP and that this would be used to impeach BP's credibility. The rape shield law specifically states, and I'll quote here, This doesn't even apply here. Again, consent is not an issue, and any prior conduct between the defendant and BP certainly could not have been of a consensual nature, and it's not relevant to the issue. Consent is simply not a defense to the charges in this case. Still, the defendant claims he was prevented from presenting a defense that BP might have had sex with two other people. This is exactly what the rape shield law was designed to keep out of the trial. It's entirely prejudicial. It's irrelevant. What about the state's attorney arguing that only the stepfather had access to her? I mean, under circumstances, I mean, that combined with the exclusion of this evidence under circumstances where there were three different sets of DNA found in her underwear. Well, in addition to the DNA material, in this case, BP's two brothers approached the garage that day. They thought they heard some strange noises coming out of the garage, pushed the door open, and both of them witnessed the defendant having sex with BP. So in addition to the DNA evidence, you've got evidence of two witnesses virtually unflappable during their testimony at the trial. You also have BP who testified that the defendant would ask her to – he would let her see her friends, use his cell phone, use his pickup truck, and all she had to do was pay up, which would be to expose herself, let him touch her, or even have sex with her. The prosecutor's remarks during this case were that the defendant was the one who had access with BP that day, and the evidence did show that there really wasn't any other person other than a neighbor, I believe his name was Colt Bone, who was around BP that day. In addition, the defense was able to argue that even if BP couldn't have traveled out of the county that day or traveled to see anyone else, that didn't prevent anyone else from traveling to Bond County to see her. The evidence did show that the defendant, even based on the item of his testimony, that he did have access to BP that day. Two other people, in addition to the victim in this case, placed him in a garage with BP, and obviously that testimony is very damaging to the defense. The defense was also able to argue that the DNA evidence in this case was not conclusive. Plain error simply did not occur here. The evidence was not closely balanced, and the people would respectfully request, if there's not any further questions, that this court affirm the jury's verdict. Thank you, Your Honors. Thank you, Counsel. I'll take the matter under advisement and render it to the station.